# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOUNDLESS BROADBAND, LLC, *et al.*,[1] | Case No. 25-10948 (BLS) |
| Debtors. | |

**SECOND REPORT OF LORI LAPIN JONES, ESQ., FEE EXAMINER, ON APPLICATIONS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RETAINED PROFESSIONALS**

Lori Lapin Jones, Esq., Fee Examiner ("Fee Examiner"), hereby files her second report and recommendations ("Second Report") pursuant to the Fee Examiner Order (defined below) with respect to applications for allowance of compensation and reimbursement of expenses of professionals retained by the Debtors (defined below) and the Creditors' Committee (defined below).

## PRELIMINARY STATEMENT

1. This Second Report covers seven applications for compensation and reimbursement of expenses by professionals (each a "Retained Professional" and collectively, the "Retained Professionals") consisting of (a) first interim applications for compensation and reimbursement of expenses (each an "Interim Application" and collectively the "Interim Applications") by six Retained Professionals and (b) one final application for compensation and reimbursement of expenses ("Final Application" and together with the Interim Applications, the "Applications"). The Applications seek compensation in the aggregate amount of $4,048,308.70 and reimbursement of expenses in the aggregate amount of $20,060.11. The Interim Applications are the first

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: Boundless Broadband, LLC (9851); Tilson Technology Management, Inc. (9537), and Tilson Middle Street Holding, LLC (9323). The Debtors' mailing address is 16 Middle Street, 4th Floor, Portland, ME 04101

1

compensation applications of the Retained Professionals and cover a period from the effective date of each Retained Professional's retention through August 31, 2025 and the Final Application covers the period from retention through September 17, 2025.

2. Following a comprehensive review of the Applications and a consultation process with the Retained Professionals, the Fee Examiner makes the recommendations set forth in this Final Report with the consent of each Retained Professional as to its respective Final Application.

## BACKGROUND SUMMARY

3. On May 29, 2025 ("Petition Date"), Boundless Broadband, LLC, Tilson Technology Management, Inc., and Tilson Middle Street Holding, LLC (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Court"). On May 30, 2025, the Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases [D.I. 24].

4. On June 17, 2025, the Office of the United States Trustee ("U.S. Trustee") appointed a seven-member Official Committee of Unsecured Creditors ("Creditors' Committee").

5. Shortly after the end of the compensation period covered by the Interim Applications, the Court entered an Order approving the sale of substantially all the assets of the Debtors [D.I. 467]. The Debtors closed on the sale on September 17, 2025 [D.I. 486].

## INTERIM COMPENSATION PROCEDURES

6. On June 24, 2025, the Court entered the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals ("Interim Compensation Order") [D.I. 158]. The Interim Compensation Order sets forth Compensation Procedures

2

(defined therein) which permit Retained Professionals to be partially paid on an interim and monthly basis. In summary, each Retained Professional is authorized to file and serve a detailed monthly fee statement ("Monthly Fee Statement") on or after the 15th day following the month for which compensation is sought. Following an objection period and the filing of a certificate of no objection, the Debtors are authorized to pay the Retained Professional 80% of fees and 100% of expenses set forth in the Monthly Fee Statement that are not subject to an objection. Retained Professionals have filed Monthly Fee Statements during these cases.

## APPOINTMENT OF THE FEE EXAMINER

7. By Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses dated July 31, 2025 ("Fee Examiner Order") [D.I. 300], Lori Lapin Jones, Esq. was appointed as the Fee Examiner in these cases (Fee Examiner Order at ¶ 1).

8. The Fee Examiner's duties and responsibilities include reviewing compensation applications for compliance with applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules") and, for attorneys, whether the firm has made a reasonable effort to comply with the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 By Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 ("U.S. Trustee Guidelines").

9. Following review of each compensation application, the Fee Examiner is tasked with

providing each Retained Professional a report on its respective fee application ("Initial Report") designed to quantify and present factual data relevant to whether the compensation request meets applicable standards. Following service of the Initial Report, the Fee Examiner and Retained Professional are to communicate concerning issues, if any, raised in the Initial Report with the goal of achieving a consensual resolution. Thirty days after service of the Initial Report, the Fee Examiner is to file a Final Report in a format designed to quantify and present factual data and legal issues relevant to whether the compensation requests comply with applicable standards and to inform the Court, in general terms, of all proposed consensual resolutions of the compensation requests.

**WORK PERFORMED BY THE FEE EXAMINER**

10. The Fee Examiner was assisted in this engagement by National CRS, LLC as Database Service Provider ("NCRS") (Fee Examiner Order at ¶ 13). Retained Professionals transmitted to NCRS their respective time records in LEDES or excel format which NCRS downloaded into its proprietary software for review and analysis by the Fee Examiner.

11. A comprehensive and tailored process was employed by the Fee Examiner to review and assess each Application and there was no preset goal to achieve a specific level of reductions or to achieve any reductions. Certain areas of examination are objective and if reductions are warranted, they are easy to quantify. Certain areas of examination (including determinations of reasonableness and staffing) are subjective and as to those areas the Fee Examiner exercised her best judgment. In so doing, the Fee Examiner was mindful of the practical judgments that professionals make on an ongoing basis and often under time constraints. The Fee Examiner's recommendations were also informed by the consultation process with Retained Professionals following issuance of the Initial Reports.

12. With respect to each Application, the Fee Examiner reviewed: (a) the retention application; (b) the declaration of disinterestedness; (c) the Order approving retention of the Retained Professional; (d) Monthly Fee Statements including any narratives; and (e) the Interim or Final Application including all exhibits. Thereafter, the Fee Examiner reviewed and analyzed time records in NCRS' proprietary software which allows for the review by multiple methods including, without limitation: by timekeeper; by date; by project category; searches by a targeted word or words; by Court hearing; by time spent in a day; for mathematical errors; etc. As the Fee Examiner navigated the review, she cross referenced other Applications and reviewed specific filings on the Court's docket. NCRS' software also allows the Fee Examiner to extract time entries and prepare charts based on specific searches.

13. Review of the Applications was performed for compliance with, inter alia, (a) Bankruptcy Code section 331, (b) Federal Rule of Bankruptcy Procedure 2016, (c) Local Rule 2016-2, (d) the applicable retention order, (e) the Interim Compensation Order, and (f) U.S. Trustee Guidelines.

14. The Fee Examiner also reviewed all expenses for which reimbursement was sought and for certain expenses requested backup documentation.

15. Following the review of fees and expenses in the Applications, the Fee Examiner prepared a confidential Initial Report which set forth in detail objections or potential objections (if any) to specific time charges or expenses in the Application. When appropriate, the Fee Examiner provided exhibits to support objections. Each Initial Report was transmitted to the respective Retained Professional on October 17, 2025.

16. Following service of the Initial Report, and consistent with the Fee Examiner Order, the Fee Examiner communicated with Retained Professionals (as needed) with a goal of reaching

mutually satisfactory resolutions of objections or issues raised. Retained Professionals either accepted the fee and/or expense reductions recommended by the Fee Examiner in the Initial Report or provided detailed explanations and/or further information to address objections or potential objections raised in the Initial Report. The Fee Examiner thereafter conferred with Retained Professionals as needed. In the end, with respect to each objection raised, either the Retained Professional accepted the Fee Examiner's proposed reduction, provided the Fee Examiner with information to satisfy the objection raised, or the Fee Examiner and the Retained Professional reached an accord on specific reductions.

17. The Retained Professionals were responsive, reasonable, and cooperative.

## **PRELIMINARY OBSERVATIONS ON APPLICATIONS**

18. In the Fee Examiner's view, the cases were well run by the professionals for both the Debtors and Creditors' Committee. From a review of the docket and the Applications, the Fee Examiner observes that the sale of substantially all the assets was approved and closed within four months of the Petition Date and all objections were resolved without litigation. The Fee Examiner also notes that co-counsels appeared to avoid duplication of work.

## **RECOMMENDATIONS ON APPLICATIONS**

19. Set forth below are summaries of the Fee Examiner's review of each Application, communications with each Retained Professional, and the Fee Examiner's recommendations with respect to the fees and expenses requested in each of the Applications.

*Debtors' Professionals*

**Firm: Verrill Dana LLP ("Verrill")**
Role: Co-Counsel to Debtors
Period Covered: June 21, 2025 – August 31, 2025
Fees Requested: $961,126.00
Expenses Requested: $1,398.81
Blended Hourly Rate for all Timekeepers: $554.92

20. Verrill serves as co-counsel to the Debtors. Verrill was substituted for Bernstein Shur Sawyer & Nelson, PA as of June 21, 2025. Verrill's Interim Application covers over two months from the effective date of Verrill's retention through August 31, 2025. During the period covered by its Interim Application, Verrill billed 1,732 hours.

21. The Fee Examiner's Initial Report to Verrill addressed the following issues: mathematical errors; duplicate time entries; block billing; travel time; use of transitory timekeepers; and certain non-compensable time.

22. Following a review of the Fee Examiner's Initial Report, Verrill provided the Fee Examiner with additional information. Thereafter, Verrill and the Fee Examiner conferred. Verrill has agreed to a reduction of its fee request in the amount of $18,316.00.

23. The Fee Examiner reviewed Verrill's request for reimbursement of expenses and has no objection to reimbursement in full of the expenses requested.

**Firm: Saul Ewing LLP ("Saul Ewing")**
Role: Co-Counsel for the Debtors
Period Covered: May 29, 2025 – August 31, 2025
Fees Requested: $533,876.50
Expenses Requested: $3,370.49
Blended Hourly Rate for all Timekeepers: $540.96

24. Saul Ewing serves as co-counsel for the Debtors. Saul Ewing's Interim Application covers a three-month period from the Petition Date through August 31, 2025. During the period covered by its Interim Application, Saul Ewing billed 986.9 hours.

25. The Fee Examiner's Initial Report to Saul Ewing addressed the following issues: a nominal mathematical error; a small amount of duplicate time entries; block billing; and certain non-compensable time.

26. Following a review of the Fee Examiner's Initial Report, the Fee Examiner and Saul Ewing conferred. Saul Ewing has agreed to a reduction of its fee request in the amount of $8,635.93.

27. The Fee Examiner reviewed Saul Ewing's expenses. Saul Ewing has agreed to reduce its expense request by $37.37. With that reduction, the Fee Examiner has no objection to reimbursement of the balance of the expenses requested.

**Firm: Woodward Park Partners, LLC ("Woodward")**
Role: Investment Banker to the Debtors
Period Covered: May 29, 2025 – September 17, 2025
Fees Requested: $1,150,000.00
Expenses Requested: $12,927.41
Blended Hourly Rate for all Timekeepers: N/A

28. Woodward served as investment banker to the Debtors. Woodward's Final Application requests approval of fees in the amount of $1,150,000.00. These fees consist of: (a) $1,000,000.00 representing the Minimum Transaction Fee (as defined in Woodward's engagement agreement) and (b) $150,000.00 representing the monthly fee of $50,000.00 for each of June, July, and August 2025. Payment is requested in the amount of $850,000.00 representing the Minimum Transaction Fee less three months of monthly fees. As this fee request is consistent with the terms of Woodward's engagement, the Fee Examiner has no objection to the fees requested.

. 29. The Fee Examiner reviewed the expenses requested by Woodward. Woodward has agreed to reduce its expense request by $4,683.00. With that reduction, the Fee Examiner has no objection to reimbursement of the balance of expenses requested.

8

**Firm: Omni Agent Solutions, Inc. ("Omni")**
Role: Administrative Advisor to Debtors
Period Covered: May 29, 2025 – August 31, 2025
Fees Requested: $55,878.30 (exclusive of Omni's fees as Claims and Noticing Agent for which a fee application is not required)
Expenses Requested: $0.00
Blended Hourly Rate for all Timekeepers: $222.53 (after 10% discount)

30. Omni serve as Administrative Advisor to the Debtors. Omni's Interim Application covers a three-month period from the Petition Date through August 31, 2025. During the period covered by the Interim Application, Omni billed 251.1 hours. Omni provided a 10% discount on its fees.

31. The Fee Examiner has no objection to the fees requested by Omni.

32. Omni did not request reimbursement of expenses.

*Creditors' Committee's Professionals*

**Firm: Lowenstein Sandler LLP ("Lowenstein Sandler")**
Role: Counsel to the Official Committee of Unsecured Creditors
Period Covered: June 19, 2025 – August 31, 2025
Fees Requested: $614,475.40
Expenses Requested: $1,301.56
Blended Hourly Rate for all Timekeepers: $1,077.46 (after a 10% discount on partners' rates)

33. Lowenstein serves as lead counsel to the Creditors' Committee. Lowenstein's Interim Application covers an approximately two-and-one-half-month period from the effective date of Lowenstein's retention through August 31, 2025. During the period covered by its Interim Application, Lowenstein billed 570.3 hours. Lowenstein discounted its partners' hourly rates by 10% which amounted to a discount of $42,997.60 in the Interim Application.

34. The Fee Examiner's Initial Report to Lowenstein addressed the following issues: a potential duplicate time entry; certain non-compensable time; summer associate time; and the time of one transitory timekeeper.

35. Following a review of the Fee Examiner's Initial Report, Lowenstein agreed to a

reduction of fees in the amount of $9,366.50.

36. The Fee Examiner reviewed Lowenstein's request for reimbursement of expenses and has no objection to reimbursement in full of the expenses requested.

**Firm: Blank Rome LLP ("Blank Rome")**
Role: Co-Counsel to the Official Committee of Unsecured Creditors
Period Covered: June 19, 2025 – August 31, 2025
Fees Requested: $115,949.50
Expenses Requested: $530.59
Blended Hourly Rate for all Timekeepers: $920.97

37. Blank Rome serves as co-counsel to the Creditors' Committee. Blank Rome's Interim Application covers an approximately two-and-one-half-month period from the effective date of Blank Rome's retention through August 31, 2025. During the period covered by its Interim Application, Blank Rome billed 125.9 hours.

38. The Fee Examiner reviewed the fees requested by Blank Rome and has no objection to the fees requested.

39. The Fee Examiner reviewed Blank Rome's request for reimbursement of expenses and has no objection to reimbursement in full of the expenses requested.

**Firm: Province, LLC ("Province")**
Role: Financial Advisor to the Official Committee of Unsecured Creditors
Period Covered: June 23, 2025 – August 31, 2025
Fees Requested: $617,003.00
Expenses Requested: $531.25
Blended Hourly Rate for all Timekeepers: $676.54

40. Province serves as financial advisor to the Creditors' Committee. Province's Interim Application covers an approximately two-month period from the effective date of Province's retention through August 31, 2025. During the period covered by its Interim Application, Province billed 912 hours.

41. The Fee Examiner's Initial Report to Province identified a small amount of non-

compensable time, use of a transitory timekeeper, and certain duplicative time among timekeepers.

42. Following a review of the Fee Examiner's Initial Report, Province provided the Fee Examiner with additional information and Province and the Fee Examiner conferred. Province has agreed to a reduction of fees in the amount of $2,762.00.

43. The Fee Examiner reviewed Province's expenses and identified an objection to certain charges. Province has agreed to reduce its expense request by $188.92. With that reduction, the Fee Examiner has no objection to reimbursement of the balance of the expenses requested.

## **CONCLUSION**

44. For the reasons set forth above, the Fee Examiner recommends: (a) interim awards of compensation in the amounts requested net of the reductions agreed to by the Retained Professionals (if applicable); (b) a final fee award to Woodward; and (c) reimbursement of expenses in the amounts requested net of reductions agreed to by the Retained Professionals (if applicable), each as set forth in this Second Report.

Dated: Great Neck, New York
       October 29, 2025                                  **LORI LAPIN JONES PLLC**

                                                           /s/ Lori Lapin Jones
                                                           Lori Lapin Jones, Esq., Fee Examiner
                                                           98 Cutter Mill Road, Suite 255 South
                                                           Great Neck, New York 11021
                                                           Telephone: (516) 466-4110
                                                           Facsimile: (516) 466-4009
                                                           Email: ljones@jonespllc.com