**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOUNDLESS BROADBAND, LLC, *et al.* | Case No. 25-10948 (BLS) |
| Debtors.[1] | (Jointly Administered) |
| | <u>Obj. Deadline</u>: February 12, 2026 at 4:00 p.m. (ET) |
| | <u>Hearing Date</u>: February 25, 2026 at 10:30 a.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER DISMISSING THE**
**CHAPTER 11 CASES AND GRANTING RELATED RELIEF**

Boundless Broadband, LLC ("**Boundless**"), Tilson Technology Management, Inc.
("**TTMI**"), and Tilson Middle Street Holding, LLC ("**TMSH**"), the above-captioned debtors and
debtors-in-possession (collectively, the "**Debtors**"), hereby move (this "**Motion**") for entry of an
order pursuant to sections 105(a), 305(a), 349, 554(a) and 1112(b) of title 11 of the United States
Code (the "**Bankruptcy Code**"), rules 1017(a) and 6007 of the Federal Rules of Bankruptcy
Procedure (the "**Bankruptcy Rules**"), and rule 1017-2 of the Local Rules of the United States
Bankruptcy Court for the District of Delaware (the "**Local Rules**"), substantially in the form
attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) dismissing the Debtors' chapter 11
cases; (ii) approving procedures for final fee applications; (iii) approving application of the
Debtors' remaining funds in accordance with the cash collateral budget attached hereto as
**Exhibit B** (the "**Cash Collateral Budget**") and the Final DIP Order (as defined below);
(iv) terminating the services of Omni Agent Solutions, Inc. ("**Omni**" or the "**Claims Agent**") in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Boundless Broadband, LLC (9851), Tilson Technology Management, Inc. (9537), and Tilson Middle Street Holding, LLC (9323). The Debtors' mailing address is 16 Middle Street, 4th Floor, Portland, ME 04101.

these chapter 11 cases; and (v) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:[2]

<strong><u>PRELIMINARY STATEMENT</u></strong>

1.      The Debtors commenced these chapter 11 cases after facing a severe liquidity crisis resulting from the wrongful termination of a commercial contract that accounted for nearly 60% of the Debtors' revenue (the "**Contract Termination**").  In consultation with the Debtors' Prepetition Lenders under the prepetition loan facility, with respect to which there was approximately $172 million outstanding as of the Petition Date, and the Official Committee of Unsecured Creditors (the "**Committee**"), the Debtors considered all options and determined, in their sound business judgment, under the circumstances, that a sale of substantially all of their assets was the best way to maximize value for the stakeholders in these cases.

2.      The Prepetition Lenders supported the sale process with a senior secured superpriority DIP term loan facility consisting of (i) a revolving credit facility providing up to $37,500,000 in new money loans (the "**New Money DIP**") and (ii) a roll-up of a portion of the Prepetition Secured Obligations into DIP Obligations in an amount equal to three times the new money advanced under the Revolving DIP Facility (the "**Rolled-Up Obligations**").

3.      With the funding provided by the New Money DIP, the Debtors conducted a fulsome postpetition marketing process and a competitive auction.  Ultimately, the Debtors selected the bid of ITG Communications, LLC ("**ITG**") as the successful bid.[3]  The sale to ITG

---

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the *Final Order (A) Authorizing the Debtors to (I) Obtain Postpetition Financing, (II) Grant Senior Secured Liens and Superiority Administrative Expense Claims, (III) Grant Adequate Protection to the Prepetition Secured Parties, and (IV) Utilize Cash Collateral; (B) Modifying the Automatic Stay; and (C) Granting Related Relief* (as supplemented and amended from time to time, the "**Final DIP Order**") [D.I. 228 and 337].

[3]     ITG later designated its rights with respect to certain assets to ClearPlan, LLC.  *See* ITG Sale Order (as defined below) [D.I. 467].

maximized value and preserved hundreds of jobs for many of the Debtors' employees by allowing for the sale of the Debtors' operating assets as a going concern. Thereafter, the Debtors conducted a marketing process and sold their claims related to the Contract Termination as well.[4]

4.      While the sales proceeds fully repaid the New Money DIP, despite the Debtors' best efforts, the sale proceeds were insufficient to repay the Rolled-Up Obligations in full, to repay any of the Prepetition Secured Obligations that had not been rolled up or provide distributable value for junior creditors.

5.      After completing the asset monetization process, the Debtors, in consultation with the Committee and the DIP Agent, evaluated paths to conclude these chapter 11 cases and monetize the limited assets remaining in the estates (the "**Remnant Assets**"). After marketing the Remnant Assets, the Debtors, the Committee and the DIP Lenders have collectively determined that confirmation of a chapter 11 plan would not be feasible and that liquidating the Remnant Assets in chapter 11 would be far too costly. Moreover, because there are no unencumbered assets, conversion of the chapter 11 cases to chapter 7 would generate additional administrative costs without a corresponding benefit to creditors, as it is evident that the Remnant Assets will not yield sufficient proceeds to repay secured creditors in full. Accordingly, the Debtors seek dismissal of the chapter 11 cases on the terms set forth herein.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the*

---

[4]     *See* Gigapower Sale Order (as defined below) [D.I. 583].

*District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

7.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion, to the extent it is later determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      The statutory bases for the relief requested herein are sections 105(a), 305(a), 349, 554(a) and 1112(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 1017(a) and 6007 and Local Rule 1017-2.

## BACKGROUND

9.      On May 29, 2025 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. As of the Petition Date, the Debtors' prepetition secured obligations exceeded $172,000,000.00. *See* Schedule D of TTMI's Schedule of Assets & Liabilities [D.I. 208].

10.      In order to support liquidity and operate during these cases, the Debtors sought and obtained debtor-in-possession financing from their prepetition lenders in an aggregate principal amount of up to $150,000,000, plus up to $2,300,000 of availability for the issuance of Letters of Credit. The DIP Facility consisted of the New Money DIP and the Rolled-Up Obligations. The DIP Loans were approved by the Court on a final basis pursuant to the Final DIP Order. Pursuant to the Final DIP Order, *inter alia,* all proceeds of Collateral, whether arising from sales in the ordinary course, liquidation, or otherwise, were to be applied to the DIP Obligations until indefeasibly paid in full, and thereafter turned over to the Prepetition Agent for application to the remaining Prepetition Secured Obligations in accordance with the Prepetition Loan Documents.

11.     To maximize value for the Debtors' estates and stakeholders, the Debtors commenced and conducted a fulsome postpetition sale process. The sale process ultimately resulted in ITG being designated as the successful bidder for substantially all the Debtors' assets.

12.     The sale to ITG maximized value and preserved hundreds of jobs for many of the Debtors' employees by allowing for the sale of the Debtors' operating assets as a going concern. On September 16, 2025, the Court approved the sale of substantially all the Debtors' assets to ITG (the "**ITG Sale Order**") [D.I. 467].[5] The ITG sale closed on September 17, 2025. Thereafter, on October 15, 2025, the Court approved the sale of the Debtors' Contract Termination claims to Winston I LLC (the "**Gigapower Sale Order**") [D.I. 583].

13.     Proceeds of both the ITG sale and the sale of the Contract Termination claims were used by the Debtors to repay the New Money DIP and fund the chapter 11 cases, including reorganization fees and expenses. However, despite the Debtors' best efforts, the sale proceeds were insufficient to repay the Rolled-Up Obligations or the Prepetition Secured Obligations, of which over $110 million in principal remains outstanding.[6]

14.     Following the closing of the sale of the Debtors' Contract Termination claims, the Debtors, in consultation with their DIP Lenders and the Committee, sought to monetize the Remnant Assets. To that end, the Debtors solicited letters of interest from potential interested parties for the Remnant Assets. In that process, the Debtors contacted additional prospective purchasers, including several suggested by the DIP Lenders and the Committee, had several rounds of calls with several prospective purchasers, and provided certain interested parties access to certain diligence materials. The Debtors also made an alternative proposal to the DIP Lenders of

---

[5]     ITG later designated its rights with respect to certain assets to ClearPlan, LLC. See ITG Sale Order [D.I. 467].

[6]     The sale proceeds were also insufficient to fund current payment of all administrative expenses.

a path to monetize residual assets that included changing their retained professionals' method of compensation from the current hourly structure to a contingent one. However, none of the bids were acceptable to the DIP Lenders and the Prepetition Lenders, who all had to agree for the proposals to be consummated.

15.     Instead, the DIP Lenders elected to sell their claims to North Astor Management LLC (the "**Buyer**") for $1.00 plus an agreed percentage of any proceeds recovered from the Remnant Assets. In return, conditioned upon dismissal of the chapter 11 cases, the Buyer will acquire the outstanding DIP Obligations and Prepetition Secured Obligations and undertake the obligations and responsibilities of the Secured Parties, including in connection with monetization of the Remnant Assets and the winddown of the Debtors pursuant to the procedures set forth on **Exhibit C**.

16.     The Challenge Period has expired with no Challenges. Accordingly, the Stipulations and Releases in the Final DIP Order are now final and binding on all parties in interest.

## RELIEF REQUESTED

17.     By this Motion, the Debtors seek entry of the Proposed Order pursuant to sections 105(a), 305(a), 349, 554(a) and 1112(b) of the Bankruptcy Code, Bankruptcy Rule 1017(a) and 6007, and Local Rule 1017-2.

18.     The DIP Agent and the Committee have consented to, and the Debtors have consulted with the U.S. Trustee in regard to, the relief requested herein.

## DISMISSAL PROCEDURES

19.     Pursuant to an agreement with the Committee and the DIP Lenders, the Debtors seek to dismiss the chapter 11 cases pursuant to the following procedures, which are designed to facilitate an efficient winddown of the Debtors' affairs and exit from the chapter 11 cases, while permitting the sale to the Buyer to be consummated:

a. The Debtors shall be permitted to use Cash Collateral strictly in accordance with the agreed Cash Collateral Budget attached hereto as Exhibit B (the "**Cash Collateral Budget**").

b. The chapter 11 cases shall be dismissed upon entry of the Proposed Order, but the Court shall retain jurisdiction and these cases shall remain open until the final fee approval process is completed.

c. All professionals subject to the final fee approval process shall file their final fee applications no later than February 6, 2026. The fee examiner shall file her final fee application by February 9, 2026. A hearing to consider the final fee applications shall be held on March 10, 2026, at 1:30 p.m. (prevailing Eastern Time), with objections due by 4:00 p.m. (prevailing Eastern Time) fourteen (14) days prior to the hearing. The final fee applications shall include a good faith estimate of the fees and expenses to be incurred (the "**Estimated Fees**") between the date the fee application is filed and (i) as to the retained professionals, the date of the hearing on this Motion, and (ii) as to the fee examiner, the date her final report is due (as to each professional, the applicable "**Gap Period**").

d. Each professional and the fee examiner shall file a supplement to their final fee applications (the "**Supplement**") setting forth the actual amount of fees and expenses incurred during the Gap Period ("**Actual Fees**"), including invoices thereto. Retained professionals shall file their Supplements two (2) Business Days after the hearing on this Motion and the fee examiner shall file her Supplement by 4:00 p.m. ET on the day after her final report is due (as set forth below, the fee examiner's deadline to file her final report is March 4, 2026). To the extent the Actual Fees are less than the Estimated Fees, no further notice is necessary; to the extent the Actual Fees are more than the Estimated Fees, (a) retained professionals' Supplements shall be subject to a five (5) day additional notice and objection period and (b) the fee examiner's Supplement shall be subject to a one (1) day additional notice and objection period.[7] If no objections to a given Supplement are received, the additional amounts contemplated therein may be included in the proposed omnibus fee order. If an objection to a Supplement is received, a hearing on such objection will be held on March 10, 2026, at 1:30 p.m. (prevailing Eastern Time).[8]

e. The fee examiner shall file her final report on retained professionals' fee applications by March 4, 2026.

f. Payment of approved fees and expenses shall be made by the Debtors in accordance with the Cash Collateral Budget, and any remaining funds shall be distributed to

---

[7] The Debtors have consulted with the Office of the United States Trustee on the exigency of requesting very short notice on the supplement to the final fee application of the fee examiner.

[8] The Debtors request permission to deviate from the timeframes prescribed in the Court's Chambers Procedures for delivery of hard copies to Chambers: the Debtors request permission to deliver hard copies of (a) retained professionals' Supplements on the day after the last of them is filed; and (b) objections (if any) to retained professionals' Supplements and the fee examiner's final report and Supplement together with the agenda.

the DIP Agent for application to the DIP Obligations in accordance with the Proposed Order, the Final DIP Order and the DIP Loan Documents. Up to $115,000 shall be allocated in the Cash Collateral Budget for the Committee's collective professional fees and expenses incurred from October 1, 2025 through the later of (i) dismissal of the chapter 11 cases and (ii) entry of orders approving final fee applications filed by each of the Committee's professionals. Up to $308,152.50 shall be allocated for the Debtors' professionals collectively (including Omni) for fees and expenses incurred from January through dismissal, subject to the disclaimer set forth on the Cash Collateral Budget. The Cash Collateral Budget shall also allocate for up to $35,000 for the fees and expenses of the fee examiner.

g.  Other than cash collateral used for funding the Cash Collateral Budget, all funds in the Debtors' operating accounts shall be promptly remitted on an indefeasible and final basis to the DIP Agent for application to the DIP Obligations pursuant to the Final DIP Order and the DIP Loan Documents.

h.  Upon entry of the Proposed Order, (i) a responsible officer will be appointed for the Debtors in lieu of the Debtors' Chief Restructuring Officer; (ii) the Debtors' Chief Restructuring Officer shall be deemed to have resigned and his service discontinued; (iii) the engagements of the Debtors' retained professionals will terminate; and (iv) the Debtors shall be authorized, but not directed, to destroy, abandon, or otherwise dispose of the Debtors' remaining books and records in their discretion, but subject to consent of the DIP Agent, and to make all payments necessary to effectuate such destruction consistent with the Cash Collateral Budget; *provided that* any documents containing personally identifiable information must be shredded.

i.  Upon entry of the Proposed Order, the Committee shall be dissolved without the need for further action by this Court, subject to the right of the Committee's professionals to engage in the final fee approval process and the rights of the Committee to participate in any appeal of the Proposed Order.

j.  Upon entry of the Proposed Order, Omni's appointment as Claims Agent shall be terminated. In accordance with Local Rule 2002-1, within fourteen (14) days following dismissal, Omni shall (i) provide the Clerk of the Court with an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF; and (iii) file a final claims register.

k.  All prior orders of this Court, including the Final DIP Order and the various sale orders issued during the course of the chapter 11 cases, shall remain final and in full force and effect, and unaffected by dismissal of the chapter 11 cases. The Court shall retain jurisdiction over any matters related to those orders and the Proposed Order.

**BASIS FOR RELIEF**

20.     Under section 1112(b)(1) of the Bankruptcy Code, a court "shall" dismiss a chapter 11 case or convert it to a chapter 7 case, "whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) provides a non-exhaustive list of examples of sufficient "cause," including the debtor's lack of a "reasonable likelihood of rehabilitation" or inability to effectuate a plan of reorganization. 11 U.S.C. § 1112(b)(4); *see also In re Am. Cap. Equip., LLC*, 688 F.3d 145, 162 n.10 (3d Cir. 2012). The inability to effectuate a plan arises when the debtor lacks the ability to "formulate a plan or to carry one out," or where the "core" elements necessary for a viable plan of reorganization do not exist. *In re Preferred Door Co., Inc.*, 990 F.2d 547, 549 (10th Cir. 1993).

21.     Similarly, section 305(a)(1) of the Bankruptcy Code allows the Court to abstain from or dismiss a chapter 11 case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Since both section 1112(b)(1) and section 305(a)(1) involve a "best interests of the debtor and its creditors" analysis, the grounds supporting dismissal under section 305(a)(1) also support dismissal under section 1112(b)(1). *See In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) (holding that both section 305 and section 1112 provide the "procedural mechanisms" for dismissal).

22.     In the instant cases, dismissal is manifestly in the best interests of the Debtors and their creditors. Nearly all of the Debtors' assets have been liquidated, and the sale proceeds, together with the indications of interest received with respect to the Remnant Assets, are insufficient to satisfy the remaining DIP Obligations and the Prepetition Secured Obligations in full. The Debtors' lack the financial resources to confirm a chapter 11 plan and the costs associated with plan confirmation would only serve to depress creditor recoveries. There are no unencumbered assets of significant value that would justify either the continued administration of

the chapter 11 cases or conversion to chapter 7. To the contrary, both options would only increase administrative burdens on the Debtors' estates without offering creditors any greater recoveries.

23. Based upon the foregoing, the Debtors submit that dismissal of the chapter 11 cases is the best option for their estates and stakeholders. Dismissal has been granted by Courts in this district under similar circumstances. *See*, *e.g.*, *In re HRHI Wind-down, LLC, et al.*, Case No. 25-10674 (TMH) [D.I. 601] (Bankr. D. Del. Dec. 31, 2025); *In re iM3NY LLC*, Case No. 25-10131 (BLS) [D.I. 284] (Bankr. D. Del. June 26, 2025); *The RP Co. Liquidating, LLC,* Case No. 23-10774 (BLS) [D.I. 700] (Bankr. D. Del. Mar. 27, 2024); *Makeup Liquidating Holdings, LLC (f/k/a BHCosmetics Holdings, LLC)*, Case No. 22-10050 (KJS) [D.I. 415] (Bankr. D. Del. Sep. 23, 2022).

24. The Court should also authorize the Debtors to abandon *de minimis* assets, including books and records. Section 554(a) of the Bankruptcy Code and Bankruptcy Rule 6007 authorize a debtor, upon notice and a hearing, to abandon estate property that is of little value to the estates or otherwise is burdensome to maintain. As noted above, the Debtors have sold, liquidated, or otherwise disposed of substantially all their assets, no longer have an operating business, and are winding down their affairs. As a result, the Court should permit the Debtors to abandon any books and records as well as other de minimis assets (other than the Remnant Assets) in the Debtors' discretion, but subject to consent of the DIP Agent, that will have little to no value to the Debtors after dismissal of the chapter 11 cases.

## NOTICE

25. Notice of this Motion has been or will be provided to: (i) the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel to the DIP Agent; (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (v) all creditors and equity holders pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no other or further notice of this Motion is required.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

26.     The Debtors believe that an efficient and expeditious dismissal of the chapter 11 cases is in the best interests of creditors and the estates, and that the notice requirements of Bankruptcy Rule 6004(a) have been satisfied.  Accordingly, the Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that such notice requirements and such stay apply.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, and grant such other and further relief as the Court deems just and proper.

Dated: January 29, 2026

**SAUL EWING LLP**
*/s/  Evan T. Miller*
Evan T. Miller (DE Bar No. 5364)
Monique B. DiSabatino (DE Bar No. 6027)
Paige N. Topper (DE Bar No. 6470)
1201 N. Market Street, Suite 2300
Wilmington, Delaware 19801
Telephone: (302) 421-6800
evan.miller@saul.com
monique.disabatino@saul.com
paige.topper@saul.com

- and –

**VERRILL DANA LLP**
Lindsay K. Milne (admitted pro hac vice)
Nate Hull (admitted pro hac vice)
One Portland Square, 10th Floor
Portland, Maine 04101-4054
Telephone: (207) 774-4000
lmilne@verrill-law.com
nhull@verrill-law.com

*Co-counsel to the Debtors and Debtors in Possession*